Thank you, Your Honors. May it please the Court. The question of whether a prior military court-martial can serve as a predicate for enhancement under the Armed Career Criminal Act is governed by two questions. The first question is whether the term any court is referenced in the statute as an unlimited meaning. The Supreme Court has addressed that in small v. United States, and the answer to that question is no. Clearly, there are some limitations to the term any in reference to any court. Do you have any, I'm sorry, three circuit courts that are opposed to your position? There are three circuit courts, Your Honor. All those circuit courts, at least the two major ones, McDonald and Martinez, which are Ninth Circuit and Seventh Circuit, were both prior to the small opinion from the Supreme Court. Both of those cases rely on a definition of any that's unlimited. When the statute says any court, there is no limitation on that. The Supreme Court in small clearly said that is not the case. What support do you find in small? Small dealt with a conviction in a Japanese court. Correct, but the point of small was not specific to Japanese. It was specific to a foreign conviction. What they said is that traditionally, not traditionally, but when we say any court, are we talking about any having an unlimited meaning? In other words, if it's a court, it counts. And they clearly said that's not the case. We have to put some context to have a true meaning of the word any. In looking at the Japanese court, there wasn't much dispute that what Mr. Small had done in Japan would have been illegal in the United States. There also wasn't a lot of inquiry into what the Japanese procedures involved. It was rather a more general classification of all the foreign bodies to say, we don't really want to engage in an inquiry into each foreign court that comes before us. So what we're going to say is that because these courts have a number of anomalies that make them incomparable to our courts, we're going to say no foreign courts. That inquiry wouldn't be necessary in this case because Mr. Grant's sole objection to the issues before us were that prior military convictions were not proper as predicate offenses under the Armed Career Criminal Act. Absolutely, Your Honor. He didn't object that his convictions in those military courts and otherwise were predicate offenses. That's not an issue in front of this court, Your Honor. We are not arguing the nature of the specific convictions. We're arguing the system from which those convictions came, and I think that's an important distinction. Because if we get into the specific convictions, then we're at the point that I think this court and other courts around the country have probably heard to their wits' end about what classifies as a predicate offense, categorical approaches, modified categorical approach. This is a different type of armed career criminal case. What's important here is does the military justice system have the sufficient procedures to give us confidence that what Mr. Grant was convicted of can now serve as a predicate for a very serious sentencing enhancement? You know, in other parts of the guidelines, in the definitional section, particularly as to what counts and what doesn't, in previous chapters it says that general court martials can be counted for guideline purposes. And then it also says that foreign convictions can't be counted. That's in the earlier part of the guidelines. Tell me why, I think I know the answer, but tell me why we couldn't extrapolate from the earlier part of the guidelines to this part to reach a common sense solution since military tribunals are authorized by Article I of the Constitution. Hopefully my answer is the same as the one you're thinking of. But there's a difference between the statutory language that I'm talking about and what's found in the guidelines. And I think the difference is apparent throughout the case law that the guidelines have now become advisory and what's in there serve as exactly what they're titled, a guideline. The statutory mandatory minimum, which is something that cannot be changed, the judge cannot go below it under any circumstances. That's a mandate from Congress. So looking at the statutory language, which is more specific and I think far more powerful than the guidelines, I think that's where we're stuck. So if we take that same analogy and we look at the statutes that are referred to in the Armed Career Criminal Act, they actually do reference military courts separately from prior convictions. And that's where you find the interplay between the Armed Career Criminal Act and the felon in possession, which they refer back and forth to each other. So I don't think the guidelines are really a controlling factor here. I think what's more important here is the statutory language, the way the Supreme Court has interpreted the statutory language, and then the general view of the military system. I'll probably mispronounce it, but the Almandrez-Torres and the Jones lines of cases that led up to Apprende have clearly always said that recidivism, prior convictions, are the one element that we're not going to require any additional court action on. In other words, we don't need a jury to find that beyond a reasonable doubt to make this crime go from 0 to 10 to 15 to life. The reason being that we have confidence in our courts that have found those priors, that those were properly entered, that the constitutional protections were afforded the defendant in the prior proceeding. It's different with the military justice system, and that has historically been the case in the United States Supreme Court all the way up to this court in the Joshua case about three or four years ago, where the court was considering the difference between a civilian and a military criminal justice system. They cited the Dowdy case, which was the Court of Appeals of the Armed Forces opinion, and Schlesinger v. Councilman from the Supreme Court, which says, as a matter of law, the military and civilian courts are separate. So I don't disagree that while the military courts draw their authority from Article I, the question here is Article III. And the courts have clearly said, the Supreme Court has over and over said, that Article III courts are the best vehicle we have for the protection of individual rights, individual liberty, for the people who are at risk of losing their property, their life, or their liberty for criminal defendants. What they have said is that the military courts, which are not Article III courts, are very different, and that those differences are extremely important in trying to determine how much credence we give the conviction or any other result that comes from a military court. And a military court has kind of the big two or the fifth and sixth amendments. There's no grand jury indictment. There's no jury trial in a military court. Military courts have an entirely different purpose than Article III courts. Military courts are to keep the fighting function ready to go. The military courts are to discipline the soldiers within the armed forces. What they are not as good as an Article III court at is ensuring individual liberties, ensuring the fairness of a criminal proceeding. What weight do you put on the fact that the code of military justice is confirmed by the United States Congress? Is enacted, I mean, excuse me. Not much, and the reason for it is because it's enacted in an entirely different set of laws. In fact, when the United States Congress legislates with military concerns, they do it with precision. This court said that in LeBron v. Rumsfeld. And the specific thing there is that when Congress wants to talk about a military issue, even when it's military justice, whatever it may be, they specifically state it. And they specifically stated in the Felon in Possession statute, which is closely related to this statute, that a dishonorable discharge would spark that prosecution. They made no mention of military courts or prior military court marshals as ever serving as a predicate for the Armed Career Criminal Act. And I think that's an important point because the two simply don't compare. Well, those three cases from circus that I've asked you about, do you have any authority to the contrary? Not directly on point because those are the only three cases that seem to have addressed this issue, period. But if you look at the cases, McDonald, which is the case out of the Seventh Circuit, I believe, that was based on the reasoning in the Grafton case, which is a turn of the century United States Supreme Court case involving a double jeopardy claim. It's not at all relevant to what we're talking about here today. The case law has evolved extensively since the McDonald opinion, and McDonald has not been updated. There's been no new case. The Martinez case really doesn't give us much help because it's two entirely different arguments. I mentioned in the brief that I believe it was Mr. Martinez that conceded he was an armed career criminal. So the court was somewhat, I guess, irritated at the fact that he would then turn around and argue that he wasn't, and nevertheless considered his arguments, which were a little bit different than what we have here. What he was arguing is that there was some type of a non-textual violation of separation of powers by doing this, and that somehow this would affect in a negative way military concerns. He didn't really articulate the same argument we're making today. So McDonald and Martinez I don't think offer us any help. Those were both pretty small, so those were both still operating under the assumption any court meant any court, and that's just not the case anymore. The Supreme Court has clearly foreclosed that argument. There is a logical limitation to the term any, and in this particular case, we look at, again, the military justice system and the long historical line of cases that kind of conclude a few years ago with this court's opinion stating they're not the same. They don't have the same prosecution system. They don't have the same court system. They don't have the same procedural safeguards. They don't have the same functions. So there's very little similarity once we get kind of below the superficial view of these courts between an Article III federal court and a uniform code of military justice court-martial. One of the cases, I think the Third Circuit, not the Third Circuit case, but the case number three you are referring to is either United States v. Lee, which is very old and also based on Grafton, I think, on faulty reasoning. There was another case called, I believe, Stuckey out of the Eighth Circuit, where the judge said that drug offenses were not counted if they were prior court-martials, but violent crimes were. That was dicta, but he also didn't offer any logical reasoning for how that would reconcile with the Supreme Court's opinion in Small. So the Circuit cases that are out there don't really address this issue in a proper manner. They're decades old. They don't give any credence to the fact that the courts have repeatedly held that there's a big difference between military law and civil law, or civilian law, to be more clear. They also don't give a lot of, some of them didn't have the benefit of Small, but some, even after Small, continue to insist that any court means any court, which is simply not the case. I think if there are no more questions, I will save my time to respond to the government. Okay, thank you, Mr. Kendrick. Let's hear from Ms. Haynes. Thank you, Your Honor. May it please the Court. My name is Stacey Haynes on behalf of the government. Defense makes a lot of the case of Smalls, the 2005 case, which held that any court did not apply to foreign courts. It held that it applies to domestic courts. So the defense in their brief and in their argument is trying to equate military courts with that of foreign courts. And as Your Honor has noted, that is not the case. Military courts were enacted by Article I of the Constitution. Congress enacted the Military Code of Justice under Title X of the United States Code. They are mentioned in the guidelines, as Your Honor mentioned, in 4A1.2G, I believe. They say military convictions for general court marshals can count for criminal history points, but yet a following section of the guidelines do not count foreign convictions. And one of the reasons that Smalls sets forth for this is that foreign countries operate in completely different ways than the United States justice system does. And the American sense of fairness cannot always be equated with judicial systems in other countries. That argument does not apply to the United States military courts. As Your Honors have noted and as we have discussed, they are enacted through Article I of the Constitution. Their Code of Military Justice is set forth in Title X. They have procedural safeguards. They go up on review by a military court of review, and Mr. Grant's appeal actually went up and was reviewed and affirmed. So they do have those procedural safeguards. I would also state that it's interesting to note in Title XVIII United States Code section 922G. Is that what you think the key is, the existence or nonexistence of procedural safeguards? I think that's one of the keys, the fact of the fairness issue and the fact of whether Smalls dealt with there being the fairness issue and whether or not countries sometimes criminalize acts that would not be crimes in an American court system. They also dealt with the fact that it would be difficult for U.S. courts to define what those crimes are, to obtain the convictions, to actually make the case. And none of that equates with a military court. We have access to the military documents, the certified convictions. We have access to the military code of justice. We have access to all that, and it doesn't equate on the same level. I would also note that one of the cases, Grafton I believe it was, an old case as defense counsel noted, but it afforded full faith and credit to military judgments in a civil court of law. So they said that military judgments are to be afforded full faith and credit. Meaning they were to be upheld or they were to be afforded full faith and credit by the civil courts. Foreign judgments aren't necessarily in that same realm. But these are, and so that's one of the reasons as well. I would note that 922G, as I mentioned, has a provision in it that not only are felons prohibited, but the whole other class of categories of individuals, including people who are dishonorably discharged from our United States military. So it would make sense that in 1985 when they added that to the statute to prohibit those individuals from having firearms and ammunition, to prohibit someone who has been or were a recidivist and fell under the terms of 924E, that they would be subject to enhanced penalties under 922G. It does not equate or make sense that someone could be prohibited from having firearms and someone could have prior violent felony convictions out of a military court and those not enhance them to make them an armed career criminal. The whole statutory purpose behind the Felon in Possession Statute and the Armed Career Criminal Statute, more specifically, is to prohibit those individuals who have shown a violent propensity for danger from having firearms and ammunition. And that's exactly the case here with Mr. Grant. His convictions were in a military court. They were in Korea, but had they been down the street in Fort Jackson here in Columbia, South Carolina, it would have been the same court, a military justice that convicted him and sentenced him and reviewed his case. So those military laws have force and effect not only in the United States, but in Korea. So it's interesting to note, would the defense counsel have the same argument, would they have made the same argument had it happened at Fort Jackson versus it having happened in Korea as it did with Mr. Grant? I didn't get that he was drawing a distinction that a general court martial held in Korea would be different from one held here. Is that what you're saying he argued? No, sir. They argued that on the trial level at sentencing. They kept making a big deal that it occurred in Korea, that it was outside the United States, in Korea. But here they have focused more on not the fact of it occurring in Korea, but it occurring in a military court. But from your position, it wouldn't make any difference as long as a general court martial tried them in Timbuktu. Yes, sir. Yes, sir, exactly. And the other correlation that I would bring to the court's attention is juvenile adjudications. Family court, as your Honor is aware, operates a little different than our adult courts. There are no jury trials. However, juvenile adjudications are set forth as proper predicates under 924E should they involve the use or carry of a firearm, knife, or other destructive device. And if they would be punishable by a term of imprisonment had it been committed by an adult. So it does not make the argument that the military court is a little different than our civilian courts in that there's no juries. There are certain constitutional safeguards that are not set forth by virtue of having no juries. That does not hold water in the government's view. Under the Wright case issued by the Fourth Circuit, a case from Judge Wooten here in South Carolina, they held that juvenile adjudications can serve as proper predicates to make an individual an armed career criminal. So if juvenile convictions can serve as enhancing predicates if they're violent, then it follows suit that military court marshals that meet the definition of violent felonies can likewise follow suit. And as your Honor noted, there are a number of circuits that have held this. Some of them are older cases. The 1970 case by the Sixth Circuit, Lee. But the Sixth Circuit had a more recent case as well. It was an unpublished opinion, Thompson, but it occurred after Smalls. And they cited Martinez and McDonald in that opinion, holding the same as the court held before in Lee. And the other cases are McDonald from the Ninth Circuit and Martinez from the Seventh Circuit. And the Eighth Circuit Stuckey case as well. So those are a litany of cases that have considered and found that military courts would be considered within any court to allow a proper conviction to count as a predicate under armed career criminal. I think we understand your position. Yes, sir. Thank you, Your Honor. Let's hear the reply from Mr. Kendrick. Thank you, Mayor of the Police Court. There are a couple of specific points I want to respond to. At the outset I'll say absolutely I would make this argument if the court marshal happened in Fort Jackson. The issue of Korea, while it may have been mentioned in the trial court, that wasn't what this objection or what this appeal is about. What this appeal is about is the fact that military courts are different than Article III courts. The courts have held that. And when we say they're a little different, that's not exactly right. They're a lot different. And I guess what we have to think about is what is the most important facet of the criminal justice system? And if it's a jury trial, which I think that anyone who has spent any time in that system would have to agree with, then that particular point right there answers the question. There is not the same jury trial in a military court. In fact, the United States Supreme Court in U.S.X.R.L. Toth v. Quarles said that a diverse civilian jury serves the primary purpose of standing up in defense of liberty, even in the face of hysteria and prejudice. Those 12 different people serve as the oldest and most powerful check against government intervention in our lives. Military juries are not the same. They don't have the same diversity. They don't have the same, I guess, gathering. In other words, they're simply assigned by a convening officer. They don't have the same unanimity requirement. I'm probably going to say that word wrong. Two-thirds. Are you saying that there can be no objection to a panel, as you put it, designated by the presiding military officer? Absolutely not. I agree that you have... Not even for cause? No, I agree. No, I'm saying I'm not saying that. I believe you have one peremptory challenge and you can make challenges for cause, which you will then get another military member in that place. What Quarles was discussing was the fact that the broad, diverse range of citizens, as opposed to the small, focused group of the military, by itself, as a whole, creates a problem, creates a very big difference. Judges are a big difference. Military judges are called to serve when needed. They're not constantly judges. Article III judges have life tenure. The reason for that, obviously, it's one of the best ways to guarantee that those judges remain independent. Once you reach the bench, you're there to stay, barring exceptional circumstances. Not so in the military. Those are very important differences. So I think that when we say a little bit different, when Small was saying that the foreign courts may not serve the American sense of fairness, nor do the military courts, as we understand it. An Article III court, guaranteed to defend the individual, guaranteed to uphold his rights, is very different than the military court, which is not in any way to serve the purpose of the individual. It is to serve the purpose of the military. It is almost exactly the opposite of the Article III court, where the federal courts have historically been where the individual goes for redress. How could it be solely to serve the purpose of the military? Even in Mr. Grant's case, he was convicted of serious offenses and put in prison. Now, was that to serve the military or was that to punish him? Again, I think that if we get into the specifics of that case, then I think we lose sight of what it is I'm arguing. It's the general process. The procedures which are different. When we talk about Mr. Grant electing to proceed non-jury, he didn't elect to proceed non-jury as we would understand it in a federal district court. He elected to proceed non-jury as the military courts present juries. The reason that they don't have the same procedural safeguards is because the military courts are to protect the fighting function of the army, the discipline of the soldiers. The army has obviously grown a great deal since the introduction of the Constitution, but it doesn't change that the purpose is the defense of our nation, to fight our wars. Can you say that the United States military courts, general court marches in general, don't use due process? I think that the difference is when we say due process, they use the process that is due a soldier in the military, but they do not use the process that would be due an individual American charged with a crime as we understand it in Article III court. But we have different levels of due process all the time. It's not a question of absolute due process, it's a question of is he afforded reasonable due process. Right, and if he's afforded reasonable due process in the military, does that translate into a higher level of due process in the Article III courts? And I think the answer to that is no, because you've got these courts who have repeatedly said, the reason we have confidence in a recidivist enhancement is because this person already had his full litany of constitutional rights, not in the military. So it's different, that's why it doesn't apply, it's exactly what Small said in the foreign courts. We don't know. The last thing I'll address in the remaining seconds is the issue of the juvenile adjudication I think is not applicable here for two reasons. Number one, juveniles are specifically included in these statutes. I think Wright pointed that out, the opinion from this case, but also the juvenile system, again the Supreme Court has reviewed it in McIver v. Pennsylvania and said we don't think a jury trial will help the individual, will help the juvenile in the system. So the lack of some of these procedural safeguards is actually specifically done for the protection of the individual receiving the process, as opposed to in the military courts, the lack of procedural safeguards is clearly for the benefit of the military, the system giving out the decisions. So there's a very big difference and I don't think that applies. If there's no more questions, I think I'm ending right on time.
judges: William B. Traxler, Jr., Henry F. Floyd, Clyde H. Hamilton